**REED SMITH LLP**
Christopher A. Lynch
599 Lexington Avenue, 24th Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
clynch@reedsmith.com

*Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>RANDY SARF,<br><br>                            Debtor. | Chapter 7<br>Case No. 19-11358 (CGM) |
| DAIRYLAND USA CORPORATION, THE CHEFS' WAREHOUSE MID-ATLANTIC, LLC, THE CHEFS' WAREHOUSE OF FLORIDA, LLC, THE CHEFS' WAREHOUSE MIDWEST, LLC, THE CHEFS' WAREHOUSE WEST COAST, LLC, and QZINA SPECIALTY FOODS NORTH AMERICA (USA), INC.,<br><br>                            Plaintiffs,<br><br>v.<br><br>RANDY SARF,<br>                            Defendant. | Adv. Proc. No. 19-01364 (CGM) |

## AMENDED COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Plaintiffs, Dairyland USA Corporation ("Dairyland), The Chefs' Warehouse Mid-Atlantic, LLC, The Chefs' Warehouse of Florida, LLC, The Chefs' Warehouse Midwest, LLC, The Chefs' Warehouse West Coast, LLC, and Qzina Specialty Foods North America (USA) Inc. (collectively, the "Plaintiffs", and each, a "Plaintiff"), by and through their undersigned counsel,

hereby file this *Amended Complaint to Determine Non-Dischargeability of Debt* (the "Complaint") against the debtor, Randy Sarf, (the "Defendant"), and in support thereof, state as follows:

## JURISDICTION AND VENUE

1. On April 29, 2019, the Defendant filed a petition for bankruptcy relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of New York (the "Court"). On June 5, 2019, the Defendant filed the *Notice of Voluntary Conversion* converting his chapter 13 case to one under chapter 7 of the Bankruptcy Code. [ECF No. 8].

2. This Court has jurisdiction over the subject matter of this Complaint and resulting adversary proceeding (this "Adversary Proceeding") pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

3. This Adversary Proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

4. This Adversary Proceeding has been brought in accordance with Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. Venue for this Adversary Proceeding is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for this Adversary Proceeding are Bankruptcy Code sections 523(a)(2), (a)(4), and (a)(6), and Bankruptcy Rules 4007 and 7001.

## THE PARTIES

7. Defendant is an adult citizen of the State of New York who, upon information and belief, currently resides at 626 1st Avenue, Apt. 11B, New York, NY 10016.

8. Dairyland is a corporation duly formed and existing under the laws of the State of New York with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

9. The Chefs' Warehouse Mid-Atlantic, LLC is a limited liability company duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

10. The Chefs' Warehouse of Florida, LLC is a limited liability company duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

11. The Chefs' Warehouse Midwest, LLC is a limited liability company duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

12. The Chefs' Warehouse West Coast, LLC is a limited liability company duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

13. Qzina Specialty Foods North America (USA) Inc. is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877.

## GENERAL ALLEGATIONS

14. By this Complaint, Plaintiffs seeks an order of non-dischargeability with respect to certain debts owed by Defendant.

15. Plaintiffs are separate entities comprising part of The Chefs' Warehouse, Inc.'s ("Chefs' Warehouse") nationally-renowned specialty food distributor business. Chefs'

Warehouse maintains a portfolio of more than 43,000 imported and domestic food products providing service to the finest restaurants, hotels, caterers, culinary schools and specialty food stores in North America.

16. Like other customer-based businesses, Plaintiffs periodically have unpaid and overdue receivables from their customers. Plaintiffs have engaged third-party debt collectors whose businesses focus on collections in the restaurant and food industry. Those debt collectors, in turn, pursue and collect amounts owing on behalf of Plaintiffs and hold such collected amounts to remit to Plaintiffs. Additionally, such debt collectors may engage attorneys to pursue litigation against current and former customers whose accounts are in arrears. Plaintiffs' main debt collector was Defendant, as President, CEO and owner of JZRM Corporation ("JZRM").

17. JZRM is a debtor in its own chapter 7 bankruptcy proceeding pending before this Court at Case No. 19-11465 (CGM).

18. Defendant is also the President, CEO, and owner of HRI Consulting, Inc. ("HRI"), which Defendant used in lieu of or in conjunction with JZRM to perform debt collection services for Plaintiffs. HRI is a debtor in its own chapter 7 bankruptcy proceeding pending before this Court at Case No. 19-11386 (CGM).

19. At all relevant times, Defendant exercised complete domination of JZRM and HRI, particularly with respect to all dealings with Plaintiffs.

20. "Generally, a plaintiff seeking to pierce the corporate veil must show that '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 18, 29 N.E.

3d 215 (2015) (citing *Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY 2d 135, 141 (1993)). In addition to committing the wrongs (as explained herein) as an individual, Defendant used his complete domination over JZRM and HRI, his alter egos, to aid in committing these frauds and wrongs against Plaintiffs, which resulted in Plaintiffs' injury.

21. Defendant and Plaintiffs did not operate under a written contractual agreement; instead, since 2011, Defendant was paid commissions on an account-by-account basis based on amounts actually collected, and/or expenses actually incurred.

22. In 2017, Plaintiffs engaged in a process to transition their receivable collection operations away from Defendant and JZRM.

23. On or about April 3, 2018, Defendant was officially notified of the immediate termination of his services and requested to return Plaintiffs' property including, *inter alia,* upwards of 1,000 of Plaintiffs' client files.

24. On or about April 12, 2018, Defendant responded to his termination by asserting that, pursuant to a broad written contract (the "Fraudulent Collection Agreement") with Dairyland, Defendant was entitled to collect a 30% commission for fees for all accounts Dairyland had transferred to Defendant and JZRM, even on accounts where no money was collected or no collection efforts were undertaken.

25. Neither Dairyland nor any of the other Plaintiffs entered into any such agreement with Defendant or JZRM. Furthermore, the Plaintiffs have no record of the Fraudulent Collection Agreement whatsoever.

26. Defendant demanded payment of the 30% commission as well as a release before returning the requested client files to Plaintiffs—nothing short of extortion.

27. By letter dated April 18, 2018, Dairyland again requested return of all files being handled by Defendant and JZRM on behalf of Dairyland and a list of those matters in litigation. Dairyland also requested a copy of the purported agreement that Defendant referenced in his April 12, 2018 correspondence.

28. Defendant responded to this request by letter dated April 23, 2018, stating that, pursuant to the Fraudulent Collection Agreement, Defendant was owed $1,862,322.66 in commissions from the Plaintiffs and that Defendant was holding $393,155.29, representing funds collected on behalf of Dairyland.

29. Any "holding" of funds belonging to Dairyland constituted an improper withholding of moneys held for the benefit of the Plaintiffs on the basis of fraud in the form of the Fraudulent Collection Agreement.

30. On May 16, 2018, Dairyland responded by letter demanding once again, *inter alia*, return of its customers' records and all funds owing to Dairyland.

31. On May 22, 2018, JZRM initiated arbitration with the American Arbitration Association based on an arbitration provision in the Fraudulent Collection Agreement and asserting in its Statement of Claim a claim of over $2 million in damages and admitting that JZRM and Defendant were withholding $560,035.59 of funds collected on behalf of Dairyland.

32. Again, the Defendant admitted to the retention of funds collected on behalf of the Plaintiffs—a wrongful retention of funds entrusted to Defendant, held for the benefit of Plaintiffs.

33. On May 30, 2018, Plaintiffs commenced a state court lawsuit by filing a seven-count complaint (the "State Court Complaint") in the Supreme Court of the State of New

York, County of New York (the "State Court") at Case No. 652688/2018 (the "State Court Fraud Litigation") again Defendant, JZRM, and HRI.

34. The State Court Complaint alleges, among other things, common law fraud, conversion, unjust enrichment, and tortious interference with prospective and/or existing contractual relations.

35. On June 4, 2018, Plaintiffs moved for a temporary restraining order and preliminary injunction permanently staying the arbitration, along with other injunctive relief.

36. On June 5, 2018, the State Court accepted a stipulation between the parties granting all the requested injunctive relief, except for Plaintiffs' request to stay the arbitration which it set for further hearing on July 9, 2018.

37. At the hearing on July 9, 2018, the State Court scheduled an evidentiary hearing for November 15, 2018, to determine the authenticity of the Fraudulent Collection Agreement, and permitted limited discovery related solely to the authenticity of the Fraudulent Collection Agreement, which was Defendant's sole basis for the arbitration demand.

38. In advance of the November 15, 2018 hearing, Plaintiffs filed a motion for sanctions (the "Sanctions Motion"), seeking spoliation sanctions against Defendant, including attorneys' fees and costs based on Defendant's destruction of computers after the commencement of the State Court Fraud Litigation.

39. The Sanctions Motion was heard on November 15, 2018, and was granted in full, obviating the need for the evidentiary hearing scheduled for that same day.

40. On November 29, 2018 the State Court issued an Order granting the Sanctions Motion in its entirety, ordering Defendant, JZRM and HRI to reimburse Plaintiffs for their reasonable attorneys' fees and costs incurred in connection with Plaintiffs having to file the

Sanctions Motion and to defend against the arbitration demand, and directing Defendant, JZRM, and HRI to withdraw the arbitration.

41. On February 7, 2019, counsel for the Plaintiffs submitted its application for attorney's fees in accordance with State Court's November 29, 2018. Pursuant to this application, Plaintiffs sought an award against the Defendant and his co-defendants, jointly and severally, of $590,348.11, consisting of (i) Reed Smith LLP's fees in the amount of $517,599.91; (ii) $46,298.82 for the services rendered by Plaintiffs' handwriting expert; and (iii) $26,449.38 for services rendered by Plaintiffs' ink expert. Before the court could rule on the application, the litigation in the State Court was stayed upon the filing of the Defendant's bankruptcy case.

**COUNT I: NON-DISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)**

42. Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 to 41 of this Complaint as if fully set forth herein.

43. Defendant's debt to Plaintiffs is for money obtained by false pretenses, false representations and/or actual fraud as particularly evidenced by Defendant's commencement of the arbitration proceeding whereby Defendant wrongfully asserted entitlement to $2 million in damages and, further, based upon the Fraudulent Collection Agreement, wrongfully withheld hundreds of thousands of dollars collected on behalf of Plaintiffs, which were to be remitted to Plaintiffs. As such, the entirety of Plaintiffs' claims against Defendant are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**COUNT II: NON-DISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)**

44. Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 to 43 of this Complaint as if fully set forth herein.

45. Defendant's debt to Plaintiffs is for money obtained as a result of Defendant's fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny, as particularly evidenced by Defendant's own admission that he wrongfully withheld hundreds of thousands of dollars collected on behalf of Plaintiffs to be paid to Plaintiffs. Additionally, the Plaintiffs incurred substantial attorneys' fees and costs caused by Defendant, which are a product of the Defendant's fraud and such amounts are owed by Defendant. As such, the entirety of Plaintiffs' claims against Defendant are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

**COUNT III:  NON-DISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)**

46. Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 to 45 of this Complaint as if fully set forth herein.

47. Defendant intentionally, deliberately, wrongfully, and without just cause actively participated in a course of conduct intended to withhold funds rightfully belonging to Plaintiffs and to require the payment of additional funds from Plaintiffs by bringing a baseless arbitration proceeding.

48. As a result of Defendant's intentional and wrongful conduct, Plaintiffs have been deprived of their property and have incurred legal fees and expenses to defend against the frivolous arbitration proceeding.

49. The conduct of Defendant was willful insofar as he deliberately and intentionally engaged in a course of wrongful acts that were committed without just cause or excuse.

50. Defendant's conduct was malicious insofar as he acted with a subjective motive to inflict the injury and/or believed the injury was substantially certain to occur as a result of his conduct.

51. As a result of Defendant's willful and malicious actions, Plaintiffs have been injured, and have suffered monetary damages.

52. Defendant's conduct violates 11 U.S.C. § 523(a)(6) and, therefore, the amounts owing to Plaintiffs from Defendant's pre-petition debt collection on behalf of Plaintiffs as well as the expenses incurred pursuant to the arbitration proceeding constitute non-dischargeable debts.

WHEREFORE, based upon the foregoing, Plaintiffs respectfully request that the Court enter an order (i) determining that any debt owed to Plaintiffs by Defendant is non-dischargeable under section 523 of the Bankruptcy Code; and (ii) granting such other and further relief as may be just and proper.

Dated: November 25, 2019
      New York, New York

Respectfully submitted,

*/s/ Christopher A. Lynch*
**REED SMITH LLP**
Christopher A. Lynch
599 Lexington Avenue, 24th Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
clynch@reedsmith.com